DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, the State of Ohio, appeals the decision of the Summit County Court of Common Pleas granting Defendant's (Theodore Georgekopoulos) motion for a new trial. We affirm the decision of the trial court.
 {¶ 2} In 1997, Defendant was convicted of murder with a firearm specification as a result of events that took place on December 3, 1996. A detailed discussion of the underlying facts of this case can be found in this Court's decision State v. Georgekopoulos (Nov. 25, 1998), 9th Dist. No. 18797, affirming Defendant's conviction. This case has had a long post-conviction procedural history. The instant appeal, however, revolves around the decision of the Summit County Court of Common Pleas granting Defendant's motion for a new trial.
 {¶ 3} On October 9, 2002, Defendant filed a motion to vacate his conviction, or in the alternative, for a new trial, alleging that newly discovered evidence entitled him to a new trial. Defendant argued that a picture which depicted stippling (tiny gun powder wounds) on his right hand was never produced at trial, and the newly discovered picture demonstrates that the State's theory of the case was faulty. On August 14, 2003, the trial court conducted an evidentiary hearing on the matter. The trial court granted Defendant's motion on January 6, 2004, and Appellant appealed. This Court remanded the matter, finding that the trial court had failed to grant Defendant the required leave to file his motion before granting him a new trial.
 {¶ 4} Upon remand, the trial court granted leave to file said motion, and Defendant's motion for a new trial was granted on December 21, 2004. Appellant now appeals, raising one assignment of error for our review.
 ASSIGNMENT OF ERROR
"The trial court committed error when it granted the Defendant's motion for a new trial after remand."
 {¶ 5} In its only assignment of error, Appellant argues that the trial court abused its discretion by granting Defendant's motion for a new trial. We disagree with Appellant and affirm the decision of the trial court.
 {¶ 6} We review a trial court's decision to grant a motion for a new trial under an abuse of discretion standard. State v. Schiebel (1990),55 Ohio St.3d 71, paragraph one of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 7} Before a trial court may grant a defendant a new trial on the ground of newly discovered evidence, the defendant must show that the evidence:
"(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. King (1989),63 Ohio App.3d 183, 191, citing State v. Petro (1947),148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, at the syllabus.
Defendant maintains that the newly discovered photograph was exposed after trial, and in the exercise of due diligence, could not have been discovered earlier. The State takes the opposing position.
 {¶ 8} The facts leading up to the instant appeal are as follows: on December 3, 1996, Defendant and his fiancé, the decedent, Olga Suhre, were in their apartment. Suhre had just prepared coffee for herself and Defendant. According to Defendant, Suhre called out to him. He looked at her and saw that she was sitting in a chair and had a gun in her hand, pointing it at Defendant.[1] Defendant claims that he attempted to grab the gun from her hand, a struggle ensued, and the gun went off. The State asserts that a different chain of events occurred, namely, that Defendant shot Suhre, and the gun did not go off accidentally.
 {¶ 9} The evidence at issue is a photograph, discovered in 2002, by Defendant's son, Pete Georgekopoulos, depicting Defendant's right hand immediately after the incident. Pete had the picture developed and blown up, and together with pictures previously introduced depicting stippling burns on Defendant's left hand, submitted the photographs to six experts; one ballistics expert and five forensic pathologists, to determine what the new picture depicted.
 {¶ 10} All six of Defendant's experts determined that the picture of his right hand depicted stippling burns, the presence of which was previously unknown. According to Defendant's experts, the presence of stippling on both of his hands (which was established only after discovering the photograph in question) refuted speculation that Defendant could have pulled the trigger.
 {¶ 11} Sanford Edberg, M.D., a trained Forensic Pathologist was shown the photograph and asked to determine whether the marks on Defendant's hands were caused by stippling burns. He determined that they were. In response to a request to issue an opinion concerning whether the stippling marks would be consistent with the firing of a gun, Dr. Edberg, in a sworn affidavit stated that: "[b]ased on my training and experience, it is impossible for a person to fire one shot from a revolver and have stippling burns on both of his or her hands [.]"
 {¶ 12} Mark Flomenbaum, M.D., a Forensic Pathologist, also determined, by looking at the pictures given to him, that the flesh wounds shown in the photo of Defendant's right hand were in fact stippling burns. He stated in his affidavit that "the presence of stippling burns on [both of Defendant's] hands demonstrates that he could not have pulled the trigger on the revolver which fired the fatal shot."
 {¶ 13} Linda Norton, M.D., an Anatomic, Clinical, and Forensic Pathologist also testified that the wounds on Defendant's hand were caused by stippling burns. Dr. Norton stated that "[i]t is virtually impossible to fire any handgun and stipple the firing hand. In my twenty-seven years of investigating gunshot wounds I have never seen this occur."
 {¶ 14} Dr. Patrick Besant-Matthews stated that "the marks on both hands are in fact stippling burns and it is impossible for a person to hold the handle of a revolver and fire it to sustain stippling burns on both hands."
 {¶ 15} Dr. Werner Spitz testified at Defendant's trial in 1997. In October of 2002, he was shown the above mentioned photographs. Dr. Spitz stated that he had not been shown the photograph prior to 2002, nor was he aware of its existence. Dr. Spitz determined that the wounds on Defendant's hand were caused by stippling burns, and he testified that "the presence of gun powder stippling on both of [Defendant's] hands demonstrates that he could not have pulled the trigger on the revolver which fired the fatal shot."
 {¶ 16} Richard Earnest, a forensic scientist and ballistics expert, also stated his belief that the photograph in question depicted stippling burns on Defendant's right hand, and the presence of stippling on both of Defendant's hands disproved the State's theory of the events.
 {¶ 17} Additionally, Barry Ward, Esq., Defendant's trial attorney, testified by affidavit that he had never seen the photographs at issue, nor was he aware of their existence prior to 2002. Armed with this newly discovered evidence, Defendant filed a motion for a new trial which was eventually granted by the trial court on December 21, 2004.
 {¶ 18} Pointing to the requirements that Petro, supra, sets forth, the State maintains that the trial court erred in granting Defendant's motion for a new trial because the evidence of stippling on his right hand could have, with due diligence, been discovered before trial, or within the 120 day period after trial in which Defendant could have filed a timely motion for a new trial.
 {¶ 19} The State does not contest that the photograph in question is "newly discovered evidence material to the defense," however, it maintains that the information regarding the presence of stippling was provided to the defense prior to trial in the form of two police reports.[2] Thus, we will focus on whether the police reports should have alerted the defense to the presence of stippling on Defendant's right hand, and whether, in determining that the reports did not alert the defense to that fact, the trial court abused its discretion in granting a new trial.
 {¶ 20} The two police reports that the State claims should have alerted the defense to the presence of stippling on Defendant's right hand were prepared by Detective Caprez. The first report notes the subject's name as Olga Suhre, born in 1963 (Defendant was born in 1945), and it states that the subject is dead. Later on the same page, Sergent Caprez does write that the subject had an "abrasion on top of left thumb, possible powder burns on web of pointer + middle finger on right hand."
 {¶ 21} In his second report, Detective Caprez wrote that "[o]n [Defendant's] right hand, in the webbing between his pointer and middle finger on the top of his hand was what appeared to be a pattern of powder burn about ½ to ¾ of an inch in circumference and localized to the listed area." At trial, Detective Caprez was asked to explain what he had seen on Defendant's right hand.
Q: "I suppose it could have been a lot of things?
A: "Could have been grease, could have been anything.
Q: "You saw it, that's how you described it?
A: "Yes.
Q: "What happened to it?
A: "It was wiped off by the rag."
Defendant's trial attorney asked Detective Caprez at trial whether there were any photographs taken of Defendant's right hand.
Q: "[A]t no time were there actually pictures taken * * * that depict only the right hand?
A: "No."
 {¶ 22} The above mentioned experts testified that the Caprez reports had no significance to them due to Detective Caprez's testimony that the marks on Defendant's right hand had been wiped off with a paper towel. Prior to the discovery of the photograph in 2002 (which the defense had been told did not exist), no expert from the State or from the defense could testify that the description contained in the Caprez' reports conclusively established the presence or the absence of stippling. Based on extensive testimony presented to the trial court regarding stippling, its description, and the photographs, the trial court rejected the State's argument that the Caprez reports provided the same information as the photographic evidence regarding the presence of stippling on Defendant's right hand.
 {¶ 23} In evaluating whether a new trial may be granted on the basis of newly discovered evidence, Petro focuses solely on the "new evidence" and the effect of its discovery. Petro does not, as the State argues, discuss whether certain information may have been available prior to trial.
 {¶ 24} Assuming, for the sake of argument, that the police reports could have been construed as depicting stippling, we turn to the State's claims that the information contained in the reports should have put the defense on notice of the presence of stippling. The testimony before the trial court shows what the defense could have discovered prior to trial with due diligence. Even if the defense had been alerted prior to trial of the possible presence of stippling through the short sentence on Detective Caprez' report, the defense, as they did in trial, would have asked if there were any pictures of the hand in question and they would have been told no. Then, the defense would have gone to Detective Caprez and would have asked him to describe what he saw, and, as shown by his trial testimony, he would have stated that the mark he had observed had been wiped off. Thus, the testimony at trial conclusively shows that had the defense investigated the possibility of stippling prior to trial, based on the information contained in the Caprez reports, the result would have been that it was not stippling that Detective Caprez had seen and there were no pictures to show what it was.
 {¶ 25} Evidence takes many forms. It can be photographic, testimonial or physical, and each form of evidence has a different probative value. The photograph in question is demonstrative evidence which has a probative value distinct from the value of the information contained in the reports. Neither party argues that the photograph could have been discovered prior to trial. The photograph depicts the presence of stippling, the presence of which was unknown during Defendant's trial. The value of the evidence of the photograph is clearly different from the information contained in the police reports.
 {¶ 26} As mentioned above, our review of a trial court's decision to grant a new trial is limited to a determination if, based on the evidence presented, the trial court abused its discretion in granting the defendant's motion for a new trial. An abuse of discretion is more than an error of law or judgment. Blakemore, 5 Ohio St.3d at, 219. It results "only when no reasonable man would take the view adopted by the trial court." Pembaur v. Leis (1982), 1 Ohio St.3d 89, 92. We find that, based on the above evidence, the trial court did not abuse its discretion in finding that the Caprez reports did not contain the same information as the photographs, and thus, the evidence of stippling was newly discovered. Consequently, the decision to grant Defendant's motion for a new trial did not amount to an abuse of discretion.
 {¶ 27} The State next argues that the evidence could have been discovered within 120 days post-trial. We conclude that Defendant's delayed motion for a new trial was permissible as nothing occurred during trial to put the defense on notice that stippling may have been present on Defendant's right hand, and that a photograph existed to depict the stippling. In fact, the opposite is true.
 {¶ 28} The author of the above police reports, the same reports that the State argues should have alerted the defense to the presence of stippling, testified that the marks on Defendant's right hand were rubbed off with a paper towel. As flesh wounds can never simply be wiped off with a paper towel, the defense had no new evidence from trial that the Defendant had stippling (a flesh wound) on his right hand. In fact, after trial, the defense had even less evidence to point to the presence of stippling than it did before trial, as the author of the police reports specifically stated that the wound was rubbed off, eliminating any possibility that stippling was present. Furthermore, Detective Caprez testified that there were no photographs depicting Defendant's right hand.
 {¶ 29} It was not until 2002, when the photograph depicting Defendant's right hand was discovered and analyzed by experts that the defense became aware that Defendant had a flesh wound on his right hand. Accepting that the police reports did not alert the defense to the presence of stippling on Defendant's right hand prior to trial, and finding that nothing during trial, or until the photograph was discovered, could have alerted the defense to the presence of stippling, we find that Defendant's motion for a new trial, made more than the allowed 120 days after trial was permissible under Crim.R. 33.
 {¶ 30} Accordingly, we overrule the State's assignment of error and affirm the decision of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, J. Moore, J. concurs.
[1] Olga Suhre apparently had made two previous suicide attempts, one with pills and the other with the gun involved in this incident.
[2] In its May 7, 2004 brief to this court, the State provided that:
"The State does not contest the findings of the trial court that `the photograph of Defendant's right hand depicting stippling marks on the webbing between the index and middle fingers is newly discovered evidence material to the defense pursuant to [Crim.R.] 33(A)(6). However, the state does contest whether the information depicted in the photograph, that the defendant had stippling on his right hand, was provided to the defense prior to trial."